**UNITED STATES of America,
Appellant,**

v.

**Samuel ROSENGARTEN, Stanislaw Orlicki, James C. Nicholas, and
Leonard Nachtman, Defendants,**

**Samuel Rosengarten, Stanislaw Orlicki,
and Leonard Nachtman,
Defendants–Appellees.**

**No. 959, Docket 88–1002.**

United States Court of Appeals,
Second Circuit.

Argued April 15, 1988.

Decided Sept. 6, 1988.

Elkan Abramowitz, New York City (Obermaier, Morvillo, Abramowitz & Iason, P.C., and Alan J. Brudner, New York City, of counsel), for defendant-appellee Leonard Nachtman.

(Kronish, Lieb, Weiner & Hellman, Alan Levine and William J. Schwartz, New York City, of counsel), for defendant-appellee Samuel Rosengarten.

(Solin & Breindel, P.C., and Kenneth I. Schacter, New York City, of counsel), for defendant-appellee Stanislaw Orlicki.

John F. Savarese, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., and Vincent L. Briccetti, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellant.

Before VAN GRAAFEILAND, NEWMAN and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

The United States appeals from an order of the United States District Court for the Southern District of New York (Brieant, C.J.) which dismissed an indictment charging appellees Samuel Rosengarten, Stanislaw Orlicki and Leonard Nachtman with conspiracy to defraud the United States. 18 U.S.C. § 371. The district court dismissed on the ground that conviction on the charge would violate the Constitution's ban on ex post facto laws. U.S. Const. art. 1, § 9, cl. 3.

The indictment, filed on August 13, 1987, charged appellees and one James Nicholas,[1] with conspiracy to defraud the United States by "impeding, impairing, defeating, and obstructing the lawful governmental functions of the Internal Revenue Service in the ascertainment, evaluation, assessment, and collection of income taxes" in violation of 18 U.S.C. § 371. The aim of the alleged conspiracy was to create false income tax deductions by backdating documents relating to a real estate tax shelter investment, thus frustrating the ascertainment and collection of taxes in accordance with section 501 of the Tax Reform Act of 1986, 26 U.S.C. § 469. Relying solely on dictum in *United States v. Binder*, 453 F.2d 805 (2d Cir.1971), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2469, 32 L.Ed.2d 805 (1972), the district court granted appellees' motion to dismiss because the indictment alleged no overt act occurring after January 1, 1987, the effective date of section 501. For the reasons that follow, we reverse.

Congress enacted the Tax Reform Act of 1986 on October 22, 1986. Section 501(a) of the Act, 26 U.S.C. § 469(a), substantially eliminated the deductibility of losses arising out of traditional tax shelter investments. This section no longer permits taxpayers to deduct losses or credits generated by "passive" activities—those business activities in which the taxpayer does not personally participate on a substantial, regular, and continuous basis—from income generated by salary, interest, dividends, and active business income. It eliminates the financial incentive of many taxpayers for investing in traditional tax shelter programs.

Although enacted on October 22, 1986, the Act did not become effective until the taxable years beginning after December 31, 1986. Tax Reform Act of 1986, Pub.L.

---

1. Nicholas pleaded guilty and is not a party to this appeal.

No. 99–514, § 501(c), 100 Stat. 2085, 2241. To ameliorate the effect of the Act, Congress provided favorable tax treatment for those taxpayers already holding investments in tax shelters on the date of enactment by gradually phasing in the passive activity loss rules for such investments. Under the phase-in provisions, any interests in activities acquired after the date of enactment were made fully subject to the passive activity loss rules. For investments made before the date of enactment, up to 65 percent of passive activity losses or credits was allowed for the 1987 taxable year, and decreasing amounts were allowed thereafter until 1991, when all allowances would cease. 26 U.S.C. § 469(m).

The facts alleged by the Government, as hereinafter set forth, are accepted as true for purposes of this appeal. *United States v. Pacione*, 738 F.2d 567, 568 (2d Cir.1984). In 1986, Rosengarten operated a tax shelter sales organization in Armonk, New York. Orlicki and Nicholas were salesmen in the organization. After the Tax Reform Act was enacted on October 22, 1986, Rosengarten and Orlicki met with a Special Agent (Agent 1) of the Internal Revenue Service, who was working undercover as one of Rosengarten's salesmen. At that meeting, Rosengarten and Orlicki indicated a willingness to backdate subsequent sales of interests in a limited partnership, tax shelter program syndicated by the Island Planning Corporation of America, so that purchasers could take advantage of the phase-in allowances. Appellee Nachtman, a principal of Island Planning, was privy to the proposed arrangement.

Later that evening, Orlicki and Agent 1 met with a second undercover Special Agent (Agent 2), who was posing as the representative of three prospective investors. At this meeting, Orlicki made a sales pitch concerning the Island Planning program and offered to backdate the sale of a $150,000 one-half unit interest in the limited partnership. In several telephone conversations that followed, Orlicki informed Agent 2 that the Island Planning deal still was available and that subscription documents could be backdated. Agent 2 was told that his check would be "time and date stamped" and that Island Planning would provide a notary public to notarize the subscription document's execution to a date preceding October 22, 1986.

Pursuant to instructions received from Orlicki and Nicholas at a December 8 meeting, Agent 2 met with Nachtman on December 9, 1986. At that meeting, Nachtman told Agent 2 that all documents would be backdated to October 18, 1986 in order to create the scenario that the parties had come into Island Planning's offices on a Saturday to sign the documents. Nachtman also told Agent 2 that the notary was "in place" and that "we never had this conversation." The arrests of the several defendants followed.

## DISCUSSION

■ In pertinent part, the general federal conspiracy statute, 18 U.S.C. § 371, proscribes conspiracies "to defraud the United States, or any agency thereof in any manner or for any purpose...." The term "defraud" when used in section 371 is interpreted much more broadly than when it is used in the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343. To be guilty of violating the latter statutes, a defendant must have used fraud or deception to deprive another of a property right. *McNally v. United States*, ── U.S. ──, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Violation of the former may be predicated upon a conspiracy to impair, obstruct or defeat the lawful function of any governmental department. *Dennis v. United States*, 384 U.S. 855, 860–61, 86 S.Ct. 1840, 1843–44, 16 L.Ed.2d 973 (1966); *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924); *Haas v. Henkel*, 216 U.S. 462, 479, 30 S.Ct. 249, 253, 54 L.Ed. 569 (1910). Moreover, the impairment or obstruction of a governmental function contemplated by section 371's ban on conspiracies to defraud need not involve the violation of a separate statute. *Haas v. Henkel, supra*, 216 U.S. at 479–81, 30 S.Ct. at 253–54; *United States v. Brasco*, 516 F.2d 816, 817–18 (2d Cir.), *cert. denied*, 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed. 2d 88 (1975); *United States v. Peltz*, 433

F.2d 48, 51 (2d Cir.1970), *cert. denied,* 401 U.S. 955, 91 S.Ct. 974, 28 L.Ed.2d 238 (1971); *Falter v. United States,* 23 F.2d 420, 423 (2d Cir.), *cert. denied,* 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003 (1928). Although an indictment charging a section 371 conspiracy to defraud the United States may aver the breach of a specific statute, such breach usually is treated as "a way of consummating the conspiracy and ... like the use of a gun to effect a conspiracy to murder, is purely ancillary to the substantive offense." *Glasser v. United States,* 315 U.S. 60, 67, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942) (quoting *United States v. Manton,* 107 F.2d 834, 839 (2d Cir.1939), *cert. denied,* 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940)).

■ A conspiracy to frustrate or obstruct the IRS's function of ascertaining and collecting income taxes falls clearly within the ban of section 371. *United States v. Klein,* 247 F.2d 908, 915–18 (2d Cir.1957), *cert. denied,* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958); *United States v. Everett,* 692 F.2d 596, 599 (9th Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). This is so even though the contemplated substantive acts, standing alone, would not constitute a federal offense. *United States v. Turkish,* 623 F.2d 769, 771 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). "[A] conspiracy to defraud the government, though it may be directed to the revenue as its object, is punishable by the general law against all conspiracies, and can hardly be said, in any just sense, to arise under the revenue laws." *United States v. Hirsch,* 100 U.S. 33, 35, 25 L.Ed. 539 (1879). Indeed, to be actionable, a conspiracy need not be carried to a successful conclusion, *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 98 (2d Cir.), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); it is complete when any of the coconspirators commits an overt act. *Hyde v. Shine,* 199 U.S. 62, 76, 25 S.Ct. 760, 761, 50 L.Ed. 90 (1905).

■ Application of the foregoing well-accepted principles makes it clear that the effective date of section 501 of the Tax Reform Act was not determinative of whether appellees committed the crime of conspiring to defraud the United States. Appellees were not charged with violating section 501. They were charged with a section 371 conspiracy to defraud the Government by impeding and obstructing the functions of the IRS in the ascertainment and collection of income taxes.

The indictment did not violate the Constitution's proscription against *ex post facto* laws. Article I, section 9, of the Constitution provides that "[n]o Bill of Attainder or *ex post facto* Law shall be passed." This clause prohibits any prosecution by the Government for conduct that was innocent when performed. *United States v. Gibbs,* 813 F.2d 596, 602 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). It is based on the principle that "persons have a right to fair warning of that conduct which will give rise to criminal penalties...." *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977); *see also Casillas v. Scully,* 769 F.2d 60, 65 (2d Cir.1985). Nothing about appellees' indictment violates this principle. As the district court observed:

> [D]efendants were painfully aware of the enactment of Sec. 501 of the Tax Reform Act of 1986, and its effect on their livelihood as promoters of real estate tax shelters. Their plans to backdate documents in order to take illegal advantage of the phase-in provision of the new law was in direct response to the terms of the law itself.

The ex post facto clause did not preclude the Government from protecting itself against appellees, who would have prevented the IRS from properly administering its affairs by conspiring to violate an already-enacted revenue statute prior to its effective date.

This Court's opinion in *United States v. Binder, supra,* does not require a different result. In *Binder,* the defendants allegedly conspired to defraud the United States by participating in transactions designed to evade a new excise tax, the Interest Equali-

zation Tax ("I.E.T."), imposed on certain types of stock transactions. The I.E.T. statute, which was enacted on September 2, 1964, imposed the I.E.T. retroactively on all affected transactions from July 19, 1963, the date on which the President proposed the tax to Congress. Binder and his coconspirators engaged in transactions both before and after the statute was enacted which were designed to evade the I.E.T. They argued on appeal that their convictions violated the ex post facto clause because the Government was permitted to prove what the defendants had done prior to the passage of the Act. We affirmed, holding that "appellants' action prior to the enactment of the I.E.T. did not provide the basis for their convictions, but was admitted to prove the existence of the conspiracy and its purpose." 453 F.2d at 808. We concluded that the convictions were constitutional because they were based entirely on post-enactment conduct. It is possible to read the opinion as conveying the negative implication that any pre-enactment conduct could not have been the basis for a valid conviction. If such an implication was made, it was dictum, since the conduct alleged to be unlawful all occurred post-enactment. We need not decide whether such dictum is or ought to be the law of this Circuit because the pending indictment does not allege any conduct occurring prior to enactment of the Tax Reform Act. Appellants are contending that the ex post facto clause insulates them from conviction for conduct designed to defraud the Government occurring after enactment but prior to the start of the first tax year to which the statute applies. Neither the holding nor the arguably inferrable dictum in *Binder* lends any support to that claim.

The order of the district court is reversed and the matter is remanded to the district court with instructions to reinstate the indictment.