UNITED STATES of America

v.

Carlos CONESA, a/k/a "Carlos Qonesa," a/k/a "Carlos Perez," a/k/a "Luis Gutierrez," Hector Aquino, a/k/a "Rudy Peguero," a/k/a "Rudy Ortiz," a/k/a "Papito Banao," Paulie Davilla, Roberto Davilla, a/k/a "Robertico," Jimmy Davilla, and Domingo Monegro, a/k/a "Kunke or Kunky," Defendants.

No. S2 95 Cr. 143 (DAB).

United States District Court,
S.D. New York.

Oct. 2, 1995.

Douglas M. Lankler, Assistant United States Attorney, Mary Jo White, United States Attorney, Southern District New York, New York City, for plaintiff.

Mitchell A. Golub, New York City, for Paulie Davilla.

Robert Lewis, Shaw, Pittman, Potts & Trowbridge, New York City, for Jimmy Davilla.

### *MEMORANDUM OPINION*

BATTS, District Judge.

In this multi-defendant criminal RICO and narcotics conspiracy case, defendant Paulie Davilla moves for dismissal of certain enumerated racketeering predicate acts and indictment counts on the grounds of duplicity, for severance, for a bill of particulars, and for certain discovery. Defendant Jimmy Davilla moves to sever the cocaine-related charges from the heroin-related charges, thereby severing the Davilla brothers'[1] trial from that of the other defendants, for a bill of particulars, and for certain discovery. For the following reasons, the motions are granted in part and denied in part.

1. Roberto Davilla has not moved, nor has he

## DISCUSSION

I. *Duplicitousness of the Heroin and Cocaine Conspiracy Charges*

Counts One and Two of the twenty count superseding Indictment charge all Defendants, including Paulie, Roberto, and Jimmy Davilla (together "the Davilla brothers"), with RICO violations, premised upon seventeen enumerated racketeering acts. Five of the seventeen racketeering acts name some or all of the Davilla brothers. The first of the racketeering acts alleges a heroin and cocaine conspiracy involving all of the defendants and lasting from roughly 1987 to 1994.

Counts Three through Nineteen appear to charge the racketeering acts of Counts One and Two as substantive offenses. Accordingly, Count Twelve of the Indictment separately charges as a substantive offense the heroin and cocaine conspiracy contained in Racketeering Act One.

Defendant Paulie Davilla moves to dismiss Racketeering Act One and Count Twelve on the basis of duplicity, arguing that the conspiracy allegations contained in those paragraphs improperly charge multiple conspiracies in a single count. Specifically, Paulie Davilla argues that these paragraphs charge four separate conspiracies, only one of which involves him.

According to Paulie Davilla, the four separate conspiracies are: one conspiracy involving Paulie, Roberto, and Jimmy Davilla in the distribution of "Platoon" heroin in the Bronx from late 1989 to early 1990; another involving Roberto and Jimmy Davilla in the distribution of "Platoon" heroin in the Bronx in 1993 and 1994; a third involving Carlos Conesa and others in the distribution of "Volcano" heroin in Rhode Island; and a fourth involving defendants Conesa, Aquino, and Monegro in the distribution of cocaine.

The Government portrays the conspiracy charged in a far different manner, describing the conspiracy as involving "a RICO criminal enterprise which engaged in narcotics trafficking, kidnap, and murder." Government's Memo at 9. The Government maintains that "the evidence will clearly establish that Pau-

joined in the motions of his brothers.

lie Davilla was a member of that organization and was well aware of the fact that the organization was involved in the distribution of narcotics." Government's Memo at 9. Further arguing that "[t]he case represents a single conspiracy because the crimes charged were committed for the common goal of the conspirators, who were members of the enterprise alleged, and in furtherance of the organizations's [sic] ongoing and continuous scheme of selling drugs." Government's Memo at 9.

A duplicitous indictment combines two or more distinct crimes into a single count. *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir.1992). However, "[a] conspiracy indictment presents 'unique issues' in the duplicity analysis because 'a single agreement may encompass multiple illegal objects.'" *Id.* (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980)).

■ It is firmly established in this Circuit that an indictment count may allege a conspiracy to commit multiple crimes. *Id.; Murray*, 618 F.2d at 896. This Circuit, in the face of contrary authority, has explicitly held that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *Aracri*, 968 F.2d at 1518 (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)). Further, "[w]hether the government has proven the existence of the conspiracy charged in the indictment and each defendant's membership in it, or instead, has proven several independent conspiracies is a question of fact for a properly instructed jury." *United States v. Johansen*, 56 F.3d 347, 350 (2d Cir.1995); *see also United States v. Alessi*, 638 F.2d 466, 472 (2d Cir.1980).

■ Applying this authority, defendant's motion for dismissal of the conspiracy counts must be denied. The Government's indictment charges, and the Government maintains that the evidence will prove, a single conspiracy. The charge that defendants engaged in varied illegal activities, through varied phases, does not of itself disprove the existence of a single conspiracy, so long as there is sufficient proof of mutual dependence and assistance among the defendants. *Aracri*, 968 F.2d at 1521; *United States v. Maldonado–Rivera*, 922 F.2d 934, 963 (2d Cir.), *cert. denied*, 501 U.S. 1233, 111 S.Ct. 2858, 115 L.Ed.2d 1026 (1990).

Accordingly, the fact that defense counsel chooses to characterize the alleged conduct as constituting four conspiracies, rather than one, does not vitiate the fact that the Government seeks to prove to a petit jury that a single conspiracy underlies the entire course of conduct of these defendants. The grand jury's concurrence in the factual propriety of the Government's charge precludes this Court from ordering a contrary result at this preliminary stage. *Cf. Johansen, supra* (reversing and remanding for new trial a conspiracy conviction where defendant was prejudiced by variance between single conspiracy charged and proof at trial showing several conspiracies). The Government shall have an opportunity to prove its case to a jury. Defendant Paulie Davilla's motion to dismiss is denied.

## II. *Severance*

Paulie Davilla moves for severance from the other defendants, seeking in the alternative, severance allowing the three Davillas to be tried separately from the remaining defendants. Jimmy Davilla similarly moves for a separate trial of the three Davilla brothers. The Government concurs that the Davillas should be tried separately from the remaining defendants, having determined little evidentiary overlap exists between the Davillas and the lead defendant, Carlos Conesa. Accordingly, the motion seeking to sever the trial of all three Davilla brothers from the remaining defendants is granted.

■ As to Paulie Davilla's motion for severance from all other defendants, including Jimmy and Roberto Davilla, the motion is denied. The Supreme Court expressed the serious burden on a defendant seeking severance in *Zafiro v. United States*, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), stating:

There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'

. . . .

We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.

. . . .

[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal

in separate trials. Rules 8(b) and 14 are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial."

506 U.S. at ——, 113 S.Ct. at 938 (citations omitted).

Because there are significant considerations of judicial efficiency at issue, on the one hand, and, at best, weak spillover arguments[2] on the other, see *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 95, 121 L.Ed.2d 56 (1992), Paulie Davilla's motion to sever his trial from that of his brothers Jimmy and Roberto Davilla is denied.

## III. *Bill of Particulars*

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, Defendant Paulie Davilla moves for a Bill of Particulars.[3] Similarly, Jimmy Davilla moves "via a bill of particulars or additional discovery" for comparable disclosure.[4]

---

**2.** To support his motion, Paulie Davilla claims that he is charged with only minimal involvement in some of the narcotics trafficking, murder, and attempted murder. His claim, however, is not supported by an objective reading of Racketeering Acts Eleven and Twelve of Counts One and Two of the second superseding Indictment.

**3.** The motion requests the following:

53. As to all acts charged in the indictment, state the approximate time, date and location it is alleged that each defendant committed acts that were part of the offenses charged including but not limited to the following:

54. State the dates, times and places where Paulie Davilla used force, violence and intimidation in order to secure and preserve from competitor drug organizations his distribution locations as set forth in paragraph 5 of the indictment.

    (a) State the names of the people who were either intimidated, or against whom force or violence was used.

    (b) Set forth the specific acts of force or violence used against individuals set forth above.

55. State the actions undertaken by Paulie Davilla in furtherance of the Murder of Carlos Daniels.

56. State the role of Paulie Davilla in the distribution of "Platoon" brand heroin during 1993–94.

57. State the role of Paulie Davilla in the distribution of cocaine by the charged enterprise.

**4.** Jimmy Davilla requests the following information:

    (1)(a) the names of all the members and associates of the alleged RICO enterprise and drug conspiracy(ies), and (b) the period of time within which each was actively participating in the enterprise and conspiracies;

    (2)(a) all of the geographical area(s) within which the enterprise and conspiracy(ies) dealt drugs or were otherwise active, and (b) the period of time within which they dealt drugs or were otherwise active in those areas. [sic]

    (3)(a) the role played by each member and associate, and (b) his or her place in the hierarchy of the enterprise and conspiracy(ies). For example, identify each member/associate as the leader, a lieutenant, a "pitcher, supplier, delivery-man, or hitman, or by whatever other nomenclature the enterprise and conspiracy(ies) use in describing a member or an associate's role. In particular, but without limitation, identify the role played by the named unindicted co-racketeers/co-conspirators Reynaldo Suarez, Luis Suarez, Julio Cesar Pereyra, Juan Perez.

58. State the date, time, location, persons present, when any person was asked to make a voice identification of a conversation, or a recording of a conversation, which the government now contends was a conversation in which Paulie Davilla was a participant.

Motion for Discovery, 404(b) Evidence and a Bill of Particulars, at 13–14.

"Rule 7(f) ... permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense..... Generally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir.1987). "'[A] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (quoting *United States v. Feola*, 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.) (mem.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989)), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

From this standard, it is clear that defendants are not entitled to a bill of particulars. The Indictment sufficiently advises defendants of the specific acts of which they are accused. The Indictment itself provides the defendants with, among other things: (1) the names of key members of the enterprise charged; (2) a detailed description of how the enterprise and its members operated; (3) the exact date of specific violent crimes allegedly committed by the moving defendants; and (4) the names of the victims of specific violent crimes allegedly committed by the moving defendants. Further, the Government maintains that it has made available to defense counsel extensive discovery that supplements the information provided in the forty-page Indictment.[5]

The bill of particulars is not a discovery technique available to a defendant to ascertain the details of the Government's proof. *United States v. Villanueva*, 1992 WL 77573 (S.D.N.Y.1992). The Government has sufficiently outlined the charged offenses and the acts underlying them to allow the defendants to prepare for trial, to avoid unfair surprise, and to escape future charges on the same crimes violative of the double jeopardy clause.[6] Accordingly, defendants' motions for bills of particulars are denied.

## IV. Discovery

Finally, Jimmy and Paulie Davilla move for various discovery. Jimmy Davilla's discovery request is limited to a Rule 16(a)(1)(C) motion for the same material sought by way of bill of particulars, as quoted above. Paulie Davilla goes farther, seeking (1) a list of all contemplated Rule 404(b) evidence, (2) statements of defendants and co-conspirators, (3) documents and tangible objects, (3) scientific experiments and reports, (4) searches or physical surveillances, (5) *Brady* material, and (6) all Jencks material (18 U.S.C. § 3500), among other materials.

The Government represents that it has produced all of the required Rule 16 material and all statements of co-defendants to the extent that they exist, and commits to

Def. Jimmy Davilla's Memorandum of Law in Support of His Motions to Sever and for a Bill of Particulars and Discovery, at 17–18.

5. This includes autopsy reports, crime scene evidence and photographs relating to the specific violent crimes allegedly committed by the moving defendants.

6. Defendant Paulie Davilla's theory underlying the request for a bill of particulars appears to be the same as that underlying the motion to dismiss the broad conspiracy counts for duplicity: there may be evidence that Paulie Davilla engaged in a heroin conspiracy in 1990, but he did nothing with respect to later heroin transactions nor with respect to any cocaine transactions. Thus, he seeks from the government a declaration by way of bill of particulars that he had no involvement with those activities. The government need not show such participation, however, to convict on the crimes charged, namely, a broad narcotics conspiracy between 1989 and 1994 including the distribution of heroin, the distribution of cocaine, and acts of violence. The government need only show "that the conspirators 'knew or must have known' of the existence of other conspirators and their participation in a larger project," *United States v. Victor Teicher & Co.*, 726 F.Supp. 1424, 1428–29 (S.D.N.Y.1989) (citation omitted), not that Paulie Davilla himself engaged in each racketeering act. As currently stated, the indictment adequately puts Paulie Davilla on notice that he is charged with involvement in wide-ranging RICO and narcotics conspiracies.

promptly provide any additional materials should the Government become so aware.

 As to statements of unindicted co-conspirators, the Government correctly cites to *United States v. Percevault,* 490 F.2d 126, 131 (2d Cir.1974), for the proposition that Rule 16(a) does not encompass and the Jencks Act does not permit the disclosure of statements of unindicted co-conspirators over the Government's objection. Government's Memorandum at 30. Accordingly, the request for statements of unindicted co-conspirators is denied.

As to *Brady* material, the Government represents that it recognizes its obligations under *Brady,* and commits to provide timely disclosure if any such material comes to light. Because courts in this district have repeatedly denied requests for discovery orders pursuant to *Brady* where the Government has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations, without vitiating the Government's obligation to make such timely disclosure, the requested order is denied at this time.

Likewise, the Government represents that it will make timely disclosure of any expert witness materials. Accordingly, without prejudice to the Defendants' right to receive such material, an order compelling its disclosure need not issue at this time.

The defendants are simply not entitled to the remaining requested material, and accordingly, their requests are denied. *See Gutierrez–Flores,* 1994 WL 558034 (S.D.N.Y.); *Victor Teicher,* 726 F.Supp. at 1442–43, 1445–46; *United States v. Bejasa,* 904 F.2d 137, 139–40 (2d Cir.), *cert. denied,* 498 U.S. 921, 111 S.Ct. 299, 112 L.Ed.2d 252 (1990).

SO ORDERED.