**UNITED STATES of America,**

v.

**Chaim BERGER, a/k/a "Herman Berger," Avrum David Friesel, a/k/a "David Friesel," a/k/a "Avraham Friesel," a/k/a "A. David Friesel," a/k/a "Aron Friesel," Kalmen Stern, David Goldstein, Jacob Elbaum, a/k/a "Yitzchok Elbaum," and Benjamin Berger, Defendants.**

No. 97 Cr. 410(BSJ).

United States District Court, S.D. New York.

Sept. 14, 1998.

Order Denying Reconsideration, Nov. 6, 1998.

148

Mary Jo White, U.S. Atty., Deborah E. Landis, Joanna C. Hendon, Mark F. Mendelsohn, Asst. U.S. Attys., New York City, for U.S.

Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., Elkan Abramowitz, and Michael R. Marra, New York City, for Kalmen Stern.

Michael Rosen, New York City, for David Goldstein.

Kirkpatrick & Lockhart, L.L.P., Michael F. Armstrong, New York City, for Benjamin Berger.

Gerald L. Shargel, New York City, for Jacob Elbaum.

## MEMORANDUM & ORDER

JONES, District Judge.

Defendants are charged in a 57–count Indictment with conspiring to defraud and with defrauding the federal government of millions of dollars in federal funds. Specifically, the Indictment alleges that defendants participated in a scheme to defraud the government of student-aid Pell Grants administered by the U.S. Department of Education ("DOE") and Tuition Assistance Program ("TAP") funds administered by the New York State Department of Education, rental subsidies administered by the U.S. Department of Housing and Urban Development ("HUD"), small business funds administered by the Small Business Administration ("SBA"), and benefits administered by the Social Security Administration ("SSA"). The Indictment further alleges that defendants defrauded the Internal Revenue Service ("IRS").

All of the defendants, except David Goldstein, are members of the Hasidic community residing in the Village of New Square, a small, incorporated village located in Rockland County, New York. The Indictment alleges that defendants individually, collectively, and through their positions in various community organizations fraudulently obtained government subsidies in order to support themselves, other members of the Hasidic community, and community institutions such as the Yeshiva of New Square.

Pending are pretrial motions filed by defendants Kalmen Stern, Goldstein, and Benjamin Berger, on behalf of themselves and defendant Jacob Elbaum.[1] Defendants seek dismissal of Counts One, Two, Four, and Five on the ground that these Counts allege only violations of civil regulations, and not federal criminal statutes. Defendants further move to dismiss Count One on the ground that it is duplicitous, Count Two on the ground that it fails to properly allege theft of federal program funds as charged, and Count Five on the ground that it is barred by the statute of limitations. Additionally, David Goldstein and Benjamin Berger move for severance of the charges against them, pursuant to Rules 8(b) and 14, Federal Rules of Criminal Procedure. Finally, Goldstein moves to dismiss Counts One, Four, Five and Twenty–Two on statute of limitations grounds, and Counts Fifty–One and Fifty–Two for improper venue.[2]

The government does not contest Goldstein's motion to dismiss Counts Fifty–One and Fifty–Two for improper venue. Accordingly, Goldstein's motion as to those Counts is granted. In all other respects, defendants' motions are denied.

### DISCUSSION

#### A.

Defendants' first argument is that Counts One, Two, Four, and Five should be dismissed because those counts allege only violations of regulatory schemes, rather than criminal statutes. The Court disagrees.

Count One charges that defendants conspired to defraud the federal government and conspired to commit a wide variety of offenses, in violation of 18 U.S.C. § 371. Counts Two, Four, and Five charge that all of the defendants, except Benjamin Berger, fraudulently obtained more than $10 million in Pell Grant funds from the DOE, in violation of 18 U.S.C. § 666 (theft of federal program funds), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1341 (mail fraud), respectively.

As defendants correctly point out, the government's evidence of these alleged offenses necessarily will reference various federal regulations. Thus, to prove that defendants fraudulently obtained Pell Grant funds, the government will have to prove that defendants contravened regulations promulgated by the DOE and obtained funds to which they were not entitled. Nevertheless, that the government's proof will include evidence

---

1. Defendants Chaim Berger and Avrum David Friesel are fugitives.

2. Defendants also moved for a bill of particulars, seeking various disclosures from the government.

The Court addressed this issue at oral argument on September 11, 1998, and the government is directed to comply with the Court's oral ruling.

that defendants violated federal regulations does not mean that the government's allegations fail to charge defendants with a federal crime. Put differently, if the government can prove the elements of the crimes charged, it matters not that the methods used by defendants to defraud the federal government also may have violated civil administrative regulations. *See United States v. Christo,* 614 F.2d 486, 490 (5th Cir.1980).

▮ Here, Count One charges defendants with conspiring to defraud the government. Under section 371, a conspiracy to defraud includes "any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." *Dennis v. United States,* 384 U.S. 855, 861, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (quotations and citations omitted); *see also United States v. Ballistrea,* 101 F.3d 827, 831 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1327, 137 L.Ed.2d 488 (1997). Such a conspiracy "need not involve the violation of a separate statute," *United States v. Rosengarten,* 857 F.2d 76, 78 (2d Cir.1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989), so long as the government proves that "deceitful or dishonest means [were] employed to obstruct governmental functions," *Ballistrea,* 101 F.3d at 832. *See also United States v. Barker Steel Co.,* 985 F.2d 1123, 1131 (1st Cir.1993) (rejecting argument that conviction under section 371 requires proof of separate violations of other substantive offenses); *United States v. Bucey,* 876 F.2d 1297, 1312 (7th Cir.) ("In order to convict under the conspiracy to defraud clause of section 371, the government need not charge or prove that [defendant] agreed to commit, or actually did commit a substantive offense. He merely must have agreed to interfere with or obstruct one of [the government's] lawful functions by means that are dishonest." (internal quotations and citations omitted)), *cert. denied,* 493 U.S. 1004, 110 S.Ct. 565, 107 L.Ed.2d 560 (1989).

▮ The government's allegations, as alleged in the Indictment, properly charge defendants with a conspiracy to defraud the federal government in violation of section 371. As the First Circuit explained in *Barker Steel,*

The allegations in this case do not present a situation where defendants conspired to do something which, in itself, was innocent, but which had the unintended effect of thwarting the [government] programs. Nor were the defendants engaging in open defiance or protest against the [government] programs. The defendants' actions, as alleged, involved deceit and trickery to benefit the defendants by hampering a lawful government function. A conspiracy of this kind has long been recognized to defraud the government.

985 F.2d at 1134.

▮ In the same vein, Counts Two, Four and Five properly allege theft of federal program funds, mail fraud, and wire fraud, respectively. Each of these offenses entails the taking of money or property through fraudulent means. Once again, the violation of the federal regulatory scheme—while obviously interwoven with the government's allegations—is merely ancillary to the ultimate issue of whether the Indictment properly charges a criminal offense. Here, the government's allegations, as charged in the Indictment, sufficiently plead the elements of the charged crimes.

Accordingly, defendants' motion to dismiss Counts One, Two, Four, and Five for failure to charge a federal offense is denied.

**B.**

Defendants also challenge Count One on the ground that it is duplicitous. Specifically, defendants claim that Count One improperly charges four unrelated schemes as a single conspiracy.

▮ An indictment is duplicitous if it combines two or more distinct crimes into a single count. *See United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir.1992). A conspiracy charge, however, "presents 'unique issues' in duplicity analysis because 'a single agreement may encompass multiple illegal objects.'" *Id.* (quoting *United States v. Murray,* 618 F.2d 892, 896 (2d cir.1980)). As a result, an indictment is not duplicitous merely because it alleges a conspiracy to commit multiple crimes. *See id.; Murray,*

618 F.2d at 896; *United States v. Conesa,* 899 F.Supp. 172, 174 (S.D.N.Y.1995). Rather, " 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.' " *Aracri,* 968 F.2d at 1518 (quoting *United States v. Tutino,* 883 F.2d 1125, 1141 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)).

■■■ In considering defendants' claim that the conspiracy count is duplicitous, the Court is mindful that "[w]hether the government has proven the existence of the conspiracy charged in the indictment and each defendant's membership in it, or instead, has proven several independent conspiracies is a question of fact for a properly instructed jury." *United States v. Johansen,* 56 F.3d 347, 350 (2d Cir.1995); *see also United States v. Gabriel,* 920 F.Supp. 498, 504 (S.D.N.Y. 1996), *aff'd,* 125 F.3d 89 (2d cir.1997). Moreover, an indictment will not be found to be impermissibly duplicitous unless it implicates the underlying policy considerations of· Rule 8(a) and threatens to expose the defendants to a risk of unfairness. *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir.1981); *United States v. McGuinness,* 764 F.Supp. 888, 892 (S.D.N.Y.1991).

■■■ Based on this analysis, the Court rejects defendants' claim that the conspiracy count is duplicitous. The Indictment charges defendants with conspiring to obtain federal benefits for themselves and their community's institutions, including the Yeshiva of New Square, by defrauding the federal government of program funds. Defendants allegedly obtained these benefits through the use of false and fraudulent documents submitted to various federal agencies, including the DOE, HUD, SBA, and SSA. The Indictment further alleges that to further the conspiracy and to disguise defendants' illegal activities, defendants engaged in a scheme to defraud the IRS.

Although each of the defendants are not charged with defrauding each of the federal agencies named in the Indictment, the Indictment sufficiently alleges a nexus between the defendants and the alleged criminal activities to link defendants to a single overarching conspiracy. Notably, the Indictment alleges a pattern of similar and interwoven contrivances used by defendants to defraud the federal agencies. These include the use of alter-egos and nominee bank accounts, and the distribution of off-the-book income through interest-free loan organizations, or "gemachs," many of which allegedly are affiliated with the Yeshiva of New Square. For example, with respect to the scheme to defraud the DOE, the Indictment alleges that Chaim Berger, Friesel, Stern, and Goldstein caused W–2 forms and paychecks to be issued to sham faculty members and administrators, including "Arye Reich," "Chaya Reich," and "Cheindel Bernat," all of whom were in fact living in Israel. These checks were then deposited into bank accounts allegedly controlled by the co-conspirators. Of necessity, with respect to the related IRS scheme, defendants allegedly used each of these same names. They also allegedly used the names "Arye Reich" and "Cheindel Bernat" with respect to the scheme to defraud HUD, and the name "Arye Reich" with respect to the scheme to defraud the SSA. In each of these instances, the Indictment alleges a pattern of interrelated methods used by the defendants. Moreover, defendants' contention notwithstanding, the Indictment alleges far more connection between defendants than the mere fact that they belong to the same religious community. Such connections include that defendants held prominent positions in entities used in the alleged conspiracy and that defendants were directly affiliated with the seminary at the center of the DOE fraud.

None of the minor differences highlighted by defendants between the methods and means used by defendants to defraud each of the federal agencies convinces the Court that the conspiracy count is duplicitous. Nor does defendants' characterization of defendants' alleged conduct as constituting four unrelated conspiracies change the Court's analysis. Rather, the government's allegations, as pled in the Indictment, sufficiently charge defendants with a single integrated and continuing conspiracy founded on and

furthered by mutual dependence and assistance by each of the defendants.

Accordingly, defendants' motion to dismiss Count One as duplicitous is denied.

### C.

Count Two alleges that defendants "did embezzle, steal, obtain by fraud, intentionally misapply, and without authority convert" over $10 million in Pell Grant funds that had been received by the Toldos Yakov Yosef Seminary ("TYY") from the DOE, in violation of 18 U.S.C. §§ 666 and 2. Defendants argue that this count, as plead, is defective in two respects.

### 1.

First, defendants argue that the government's allegations fail to make out a violation of section 666 because the Indictment alleges that TYY itself fraudulently obtained the Pell Grant funds from the DOE. According to defendants, they cannot be convicted under section 666 of embezzling funds from TYY if TYY obtained the funds unlawfully, because "embezzlement" requires that the property in question first come lawfully into the defendant's possession.

■ Section 666 criminalizes the wrongful obtainment of property from an organization that receives more than $10,000 in benefits from the federal government in any one-year period. *See* 18 U.S.C. § 666(a)(1)(A), (b); *United States v. Delano,* 55 F.3d 720, 729 (2d Cir.1995). The section was enacted "to 'create new offenses to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program.'" *United States v. Zyskind,* 118 F.3d 113, 116 (2d Cir.1997) (quoting S.Rep. No. 98–225, at 369 (1983) ("Senate Report"), reprinted in 1984 U.S.C.C.A.N. 3182, 3510). Contrary to defendants' claim, nothing in the statute requires the government to prove that the organization which originally received the funds did so in a lawful manner. Rather, the "manifest purpose [of the statute] is to safeguard finite federal resources from corruption and to police those with

control of federal funds." *United States v. Rooney,* 37 F.3d 847, 851 (2d Cir.1994); *see also Zyskind,* 118 F.3d at 116 ("The purpose of the legislation was to 'protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery.'" (quoting Senate Report at 370, 1984 U.S.C.C.A.N. at 3511)); *United States v. Urlacher,* 979 F.2d 935, 938 (2d Cir.1992) (noting that terms "embezzling, stealing, obtaining by fraud, [and] converting" as used in section 666 "cover any possible taking of money for one's own use or benefit").

■ Here, the government's allegations, as contained in Count Two, properly charge defendants with a violation of section 666. As alleged, defendants wrongfully obtained over $10 million in federal funds from, and through, TYY. That TYY itself may have unlawfully obtained some or all of these funds does not remove defendants' conduct from the scope of the statute. On the contrary, defendants' conduct, as alleged, falls directly within the statute's prohibitions. Accordingly, defendants' motion to dismiss Count Two for failure to properly allege embezzlement is denied.

### 2.

Second, defendants argue that Count Two should be dismissed because the Indictment fails to allege the minimum statutory amounts required under section 666 for each of the years alleged in the Indictment.

To convict defendants of Count Two, the government will have to prove that defendants wrongfully obtained property worth more than $5,000 from TYY within a one-year period and that TYY received federal benefits in excess of $10,000 within one year of defendants' offense. *See* 18 U.S.C. § 666(a)(1)(A)(i), (b); *United States v. Valentine,* 63 F.3d 459, 462–63 (6th Cir.1995). Here, the Indictment sufficiently alleges these minimum statutory amounts.

■ An indictment meets the requirements of Rule 7(c) "when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeop-

ardy in a future prosecution based on the same set of events." *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992). Normally, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Id.* (quoting *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975)). In considering the sufficiency of the allegations in an indictment, "common sense must control," and the indictment must be read to include facts which are necessarily implied by the specific allegations made. *Id.*

■ Here, Count Two of the Indictment alleges that from in or about November 1987 through in or about October 1992, defendants wrongfully obtained more than $10 million in Pell Grant funds from TYY and that TYY "received within the one-year period before and during the commission of this offense benefits in excess of $10,000." The Indictment further alleges in the Overt Acts section of Count One, that TYY received more than $700,000 in Pell Grants in 1988, more than $1.6 million in 1989, more than $2.1 million in 1990, more than $2.9 million in 1991, and more than $2.8 million in 1992. These allegations, which generally track the language of the statute, suffice to charge defendants with a violation of section 666, pursuant to Rule 7(c)(1).

Defendants' claim that the Indictment is defective because it fails to break down the amount that defendants obtained for each year alleged in the Indictment is without merit. The Indictment, as pled, suffices to notify defendants of the crime charged and the specific facts alleged. The jury will be instructed at trial as to the elements of the offense, including the statutory requirements that defendants wrongfully obtained more than $5,000 within one year and that TYY received more than $10,000 in benefits within one year of the commission of defendants' offense. If the government is unable to make this showing, defendants will be able to challenge the sufficiency of the evidence against them. At this point, however, the allegations in the Indictment are sufficient.

Accordingly, defendants' motion to dismiss Count Two for failure to allege the minimum statutory amounts for each year listed in the Indictment is denied.

### D.

Defendants move to dismiss Count Five on statute of limitations grounds. In addition, Goldstein moves to dismiss Counts One, Two, Four, Five, and Twenty–Two on statute of limitations grounds as applied to him.

### 1.

■ Count Five charges each of the defendants, except Benjamin Berger, with mail fraud related to the alleged scheme to fraudulently obtain federal Pell grants, in violation of 18 U.S.C. § 1341. The statute of limitations period for mail fraud is five years, pursuant to 18 U.S.C. § 3282. This period runs from the date of the charged mailing, regardless of whether the defendants' actions concerning the alleged scheme to defraud occurred before the statutory period. *See United States v. Eisen,* 974 F.2d 246, 263 (2d Cir.1992), *cert. denied,* 507 U.S. 998, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993).

■ Here, the Indictment, which was filed May 28, 1997, alleges that defendants caused the DOE to mail Student Aid Reports to individuals apparently enrolled as students at various post-secondary institutions, including TYY and Rockland Community College, in furtherance of defendants' scheme to fraudulently obtain student grant money. The predicate mailings occurred as recently as October 1992. This is within the five-year period of the Indictment's filing.

Defendants' contention that Count Five should be dismissed because it fails to allege that a specific mailing occurred within the statute of limitations period is rejected. If the government fails to prove at trial that any of the mailings occurred within the limitations period, defendants can renew their motion. At this point, however, defendants' challenge to the Indictment is premature. *See United States v. Persico,* 621 F.Supp. 842, 873 (S.D.N.Y.1985).

**154**

**2.**

The Court also rejects Goldstein's arguments for dismissal of Count One, Two, Four, Five and Twenty–Two on statute of limitations grounds.

■■■ The primary basis for Goldstein's argument is a letter he apparently sent to Chaim Berger on August 1, 1991, which notified Berger that Goldstein was resigning from TYY, effective September 1, 1991, to work for an accrediting organization called the Accrediting Council for Continuing Education and Training ("ACCET"). According to Goldstein, this letter provides conclusive evidence that his involvement in any of the charged criminal conduct ended by September 1, 1991, more than five years before the Indictment was filed.

While this letter may provide Goldstein with an argument that he severed his ties to any of the alleged criminal endeavors prior to September 1, 1991, it is far from dispositive at this stage. A properly instructed jury will decide whether Goldstein withdrew from the conspiracy and ceased all activity in the other charged offenses and whether that withdrawal was prior to the statute of limitations period. At this point, however, the Indictment properly alleges that Goldstein committed the charged offenses within the statutory period and that he continued to bear responsibility for the substantive acts committed by his co-conspirators in furtherance of the conspiracy. Accordingly, Goldstein's motion to dismiss Counts One, Two, Four, Five, and Twenty–Two on statute of limitations grounds is denied.[3]

**E.**

Benjamin Berger and Goldstein move for severance of the charges against them, pursuant to Rules 8(b) and 14. The gist of their claims is that the charges against them are minor compared to the elaborate schemes alleged in the Indictment and that joint trials with the other defendants will serve neither the interests of justice nor judicial economy.

■■■ Rule 8(b) provides that defendants "may be charged in the same indictment . . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). Under Rule 8(b), joinder is permissible where two or more persons' criminal acts are " 'unified by some substantial identify of facts or participants,' or 'arise out of common plan or scheme.' " *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989) (quoting *United States v. Porter*, 821 F.2d 968, 972 (4th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988)). Even where joinder is proper under Rule 8(a), however, the Court in its discretion may grant a severance under Rule 14 if failure to do so would unduly prejudice the defendant. *See* Fed.R.Crim.P. 14; *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir.1990), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 680, 112 L.Ed.2d 672 (1991); *U.S. v. Reale*, No. S4 96 Cr. 1069, 1997 WL 580778, at *10 (S.D.N.Y. Sept.17, 1997).

■■■ Here, having reviewed the charges made in the Indictment and considered the government's anticipated evidence, the Court concludes that defendants properly were joined under Rule 8(b). The Indictment alleges an interwoven series of acts committed by defendants to achieve their overarching purpose of enriching themselves and their community's institutions through the unlawful acquisition of federal program funds. Defendants allegedly achieved this purpose by submitting false and fraudulent documents to the various governmental agencies named in the Indictment and then diverting the received income through the use of various reoccurring alter-egos and bank accounts. While each of the defendants are not alleged to have participated in each charged transaction, the charges as a whole demonstrate a pattern of deception indicative of a common scheme and mutual dependence. As the government alleges, "each of the schemes, regardless of which defendants participated, employed means and methods that perfectly mirrored the means and methods used by

---

**3.** Pursuant to the Court's ruling at oral argument, Goldstein is granted leave to supplement his arguments on this issue. If Goldstein does submit additional papers, the Court will revisit its ruling once the government has had an opportunity to respond.

other defendants in furtherance of the other schemes." Adding to the appearance of a common plan are the allegations related to the scheme to defraud the IRS, which allegedly served both to enrich defendants and to enable defendants to defraud the individual agencies. Based on these allegations, the government has demonstrated ample overlap of participants and acts to justify joinder under Rule 8(b).

Nor does the Court find that severance is warranted under Rule 14. Under Rule 14, defendants bear a heavy burden of showing that joinder will result in substantial prejudice. *See United States v. Amato,* 15 F.3d 230, 237 (2d Cir.1994); *Cervone,* 907 F.2d at 341. This is due to the recognition that joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *see also United States v. Turoff,* 853 F.2d 1037, 1039 (2d Cir.1988) ("joint trials serve the public interest in economy, convenience, and the prompt trial of the accused"). Faced with the strong preference for joint trials, defendants are not entitled to a severance unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro* at 538, 113 S.Ct. 933.

Here, neither of the moving defendants have made such a showing. The fact that defendants may have different degrees of guilt or face varying amounts of evidence does not require separate trials. *See United States v. Locascio,* 6 F.3d 924, 947 (2d Cir.1993) ("joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible"), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1646, 128 L.Ed.2d 365 (1994); *United States v. Hernandez,* 85 F.3d 1023, 1029 (2d Cir.1996) ("The fact that one of several codefendants is tried for a crime not committed by another codefendant does not, without more, create the sort of miscarriage of justice that would require a new trial."); *United States v. Carrozza,* 728 F.Supp. 266, 273 (S.D.N.Y.1990), *aff'd,* 956 F.2d 1160 (2d Cir.1992). Moreover, based on the government's representations, it seems likely that the evidence at trial against each of the defendants, including Benjamin Berger and Goldstein, necessarily will be interrelated. According to the government, proof of one scheme will be indispensable for a full understanding of the other charged schemes, as well as the charged criminal enterprise as a whole. Thus, severance would only result in a repetition of evidence that would have been admissible in any case against all of the defendants at a joint trial. *See United States v. Rosa,* 11 F.3d 315, 341 (2d Cir.1993) ("Evidence at the joint trial of alleged coconspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial."), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). Finally, to the extent that some of the government's evidence will not apply to one or more of the defendants, the Court will give appropriate limiting instructions to the jury, directing the jurors to consider the evidence as to each count of the Indictment and as to each defendant separately. The Court will further instruct the jury that a verdict of guilty as to any defendant on any count should not in any way control the jury's verdict as to any other offenses charged.

Accordingly, since joinder of defendants was proper and the Court does not find that a joint trial will expose the individual defendants to a risk of undue prejudice, the motions for a severance are denied.

### CONCLUSION

Goldstein's motion to dismiss Counts Fifty–One and Fifty–Two for improper venue is granted. The government is directed to comply with the Court's oral ruling concerning a bill of particulars. In all other respects, defendants' pretrial motions are denied.

The parties are directed to submit their proposals with respect to jury selection, including any proposed questionnaires, by September 28, 1998. The parties are further

directed to submit any requests to charge by October 19, 1998.

**SO ORDERED.**

## MEMORANDUM ORDER

By letter brief dated September 29, 1998, defendant David Goldstein moves for reconsideration of that portion of the Court's September 14, 1998 Memorandum & Order which denied Goldstein's motion to dismiss Counts Two, Four, Five, and Twenty–Two on statute of limitations grounds. Having considered Goldstein's arguments, the Court adheres to its prior ruling.

Each member of a conspiracy remains responsible for the known or reasonably foreseeable acts committed by his coconspirators in furtherance of a conspiracy, unless and until he takes an affirmative action to withdraw from the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 646, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Eisen,* 974 F.2d 246, 268 (2d Cir.1992), *cert. denied,* 507 U.S. 1029, 113 S.Ct. 1840, 123 L.Ed.2d 467 (1993); *United States v. Brasco,* 516 F.2d 816, 818 (2d Cir.), *cert. denied,* 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975). Mere cessation of activity in furtherance of the conspiracy does not necessarily establish that a member has withdrawn. *See United States v. Goldberg,* 401 F.2d 644, 648 (2d Cir.1968), *cert. denied,* 393 U.S. 1099, 89 S.Ct. 895, 21 L.Ed.2d 790 (1969).

Here, the Indictment properly charges that defendants, including Goldstein, committed substantive offenses within the statute of limitations period in furtherance of a conspiracy to defraud the federal government. Contrary to Goldstein's characterization, nothing about the Government's theory "revives" or "reincarnates" an offense that would otherwise be time-barred. While Goldstein may argue at trial that he withdrew from the conspiracy on September 1, 1991, the Government is entitled to argue that Goldstein remained in the conspiracy and therefore continued to bear responsibility for the criminal acts committed by his coconspirators.

Accordingly, Goldstein's motion for reconsideration is denied.

**SO ORDERED.**