UNITED STATES of America,

v.

Anthony SAINATO and Vincent Sainato, Defendants.

Nos. CR 98–96 (ADS), CR 98–397 (ADS).

United States District Court,
E.D. New York.

Nov. 10, 1998.

Zachary W. Carter, United States Attorney, E.D.N.Y., Garden City, New York, by Barry Jonas, Senior Trial Attorney, for the United States of America.

Jacob R. Evseroff, Brooklyn, NY, for defendant Anthony Sainato.

Dale L. Smith, Brooklyn, NY, for defendant Vincent Sainato.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On June 12, 1998, the defendants, Anthony Sainato and Vincent Sainato (the "defendants"), were arraigned on Superceding Indictment Numbers CR 98–96 and CR 98–397, both of which charged them each with a single count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371. The defendants jointly move to dismiss Superceding Indictment Number CR 98–397. The defendants also move for an Order compelling discovery and a bill of particulars with respect to both superceding indictments.

## I. BACKGROUND

### A. Superceding Indictment Number CR 98-397

Superceding Indictment Number 98 CR 397 charges a conspiracy that began in September 1989 and ended in October 1996, and included the defendants and co-defendant James McAllister. The indictment alleges that Anthony Sainato was the "traffic manager" of Suffolk Distributing, Inc. ("Suffolk Distributing"), a trucking business located in a trailer on 48th Street in Queens County, and that he also operated trucking businesses known as New Way Environmental ("New Way") in Kings County, Safe Way Removal Service, Ltd. ("Safe Way") in Far Rockaway, and Marietta Trucking, Inc. ("Marietta") in Brooklyn.

According to the indictment, from approximately September 1989 through October 1996, Anthony Sainato, his brother and co-defendant Vincent Sainato, and McAllister "together with others, knowingly and intentionally conspired to defraud the United states by impeding, impairing, obstructing and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department, an agency and department of the United States, in the ascertainment, computation, assessment and collection of revenue, to wit: income taxes." (Indictment CR 98-397, at ¶ 4). The indictment alleges that the defendants deposited checks issued to companies which they were associated with into corporate bank accounts, causing the income from those checks to be transferred among numerous bank accounts under their control or the control of others, and withdrawing the income by issuing or causing to be issued, checks to fictitious individuals (Indictment CR 98-397, at ¶¶ 5-10). In addition, the indictment charges that during the period of the conspiracy, Suffolk Distributing and Safe Way did not file federal corporate tax returns, Marietta filed a federal corporate income tax return only for 1994, and New Way filed federal corporate income tax returns only for 1991 and 1994 (Indictment CR 98-397, at ¶ 9).

### B. Superceding Indictment Number CR 98-96

Like the other indictment, Superceding Indictment Number CR 98-96 charges a conspiracy to defraud the United States by impeding, impairing, obstructing and defeating the lawful Government functions of the IRS "in the ascertainment, computation, assessment and collection of revenue, to wit: income taxes." (Indictment CR 98-96, at ¶ 6). The alleged co-conspirators in this scheme were James McAllister and Royce Aerospace Materials Corporation ("Royce Aerospace"), a New York corporation in the business of selling raw materials to aircraft manufacturers (Indictment CR 98-96, at ¶¶ 6-7). The indictment alleges that from approximately May 1990 through July 9, 1996:

7. ... [The defendants] caused the names of companies, including companies controlled by the defendants such as Suffolk Distributing, as well as the names of fictitious companies, to be provided to co-conspirators at Royce Aerospace. Bookkeepers at Royce Aerospace then issued Royce Aerospace checks payable to these companies, including Aviation Sales, Suffolk Metals Dist., P & R Steel, Newway Corp., as well as others. The checks provided to the defendants were recorded in the books and records of Royce Aerospace as business expenses and were fraudulently deducted as business expenses on the federal corporate income tax returns of Royce Aerospace.

8. The defendants ... cashed the Royce Aerospace checks by various methods ... [and] the cash was delivered back to their co-conspirators at Royce Aerospace, less a 'fee' kept by the defendants.

The indictment further charges that Royce Aerospace, an unindicted co-conspirator, used this cash to pay kickbacks to subcontractors in the aerospace industry to ensure that the company was awarded sales contracts (Indictment CR 98-96, at ¶ 9). The indictment states that the defendants committed overt acts in furtherance of the conspiracy by causing eleven (11) Royce Aerospace checks to be issued to fictitious companies, and goes on to list the check

date, number, amount, and the fictitious company to which the check was issued (Indictment CR 98–96, at ¶ 10). Finally, the indictment indicates that false federal corporate tax returns, Forms 1120, were filed on Royce Aerospace's behalf for tax years 1991, 1992 and 1993.

## II. DISCUSSION

### A. The Defendants' Motion to Dismiss Superceding Indictment Number CR 98–397 Under Rules 7(c)(1) and 12(b)(2): The Standards

The defendants move to dismiss the indictment pursuant to Rule 12(b)(2) on the ground that it is defective under Rule 7(c)(1). Rule 7(c)(1) provides: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." "The indictment must sufficiently 'inform the defendant of the charges he must meet' and must provide 'enough detail' so that the defendant 'may plead double jeopardy in a future prosecution based on the same set of events.'" *United States v. Goodwin*, 141 F.3d 394, 401 (2d Cir.1997) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.), *cert denied*, 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992)).

To comply with these standards, the Second Circuit has "often stated that an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis*, 952 F.2d at 693 (citations and internal quotation marks omitted); *see also United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Stavroulakis* ). Thus, on the one hand, "when the definition of an offense includes 'generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species—it must descend to particulars.'" *United States v. Stavroulakis*, 952 F.2d at 693 (citing *Russell v. U.S.*, 369 U.S. 749, 765 (1962)). On the other hand, "The Federal Rules of Criminal Procedure encourage succinct criminal pleadings." *Id.* (citing Fed.R.Crim.P. 7(c)(1); 1 Wright, Federal Practice and Procedure:

Criminal 2d § 123 at 346–47 [1982] ). While "precision and proper notice to the defendant cannot be sacrificed for the sake of brevity, ... common sense must control, and ... '[a]n indictment must be read to include facts which are necessarily implied by the specific allegations made.'" *Id.* (quoting *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir.), *modified*, 439 F.2d 1198 (2d Cir.1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971)).

### B. The Sufficiency of Superceding Indictment Number CR 98–397

■ The defendants contend that the indictment cannot stand because it: (1) fails to set forth an element of the crime charged, in that it fails to state a "deceitful or dishonest means" by which the IRS was impeded; (2) does not provide adequate notice such that the defendants could defend against the accusation at trial; (3) does not allow for the defendants to plead double jeopardy should another prosecution be brought against them; and (4) fails to state a crime within the meaning of 18 U.S.C. § 371. The Court disagrees, and finds that the indictment satisfies the basic pleading requirements by setting forth a crime, accurately stating the elements of the offense charged and indicating the approximate time and place of the offense, thereby providing sufficient detail to allow defendants to prepare a defense and to invoke the protection of the Double Jeopardy Clause of the Fifth Amendment against any subsequent prosecution for the same offense.

The general federal conspiracy statute, 18 U.S.C. § 371, punishes a conspiracy "to defraud the United States, or any agency thereof in any manner or for any purpose." 18 U.S.C. § 371. A conspiracy to defraud under section 371 embraces "any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of Government." *United States v. Ballistrea*, 101 F.3d 827, 831–33 (2d Cir.1996) (citing *Dennis v. United States*, 384 U.S. 855, 861 (1966)). Here, the defendants have been charged with a *Klein* conspiracy (*United States v. Klein*, 247 F.2d 908 (2d Cir.1957)), which is a conspiracy to impede, impair, ob-

struct or defeat the IRS in the ascertainment and collection of revenue.

"[I]t is well established that the term 'defraud' as used in section 371 ... 'not only reaches schemes which deprive the Government of money or property, but also is designed to protect the integrity of the United States and its agencies.'" *United States v. Ballistrea*, 101 F.3d at 831–33 (quoting *United States v. Nersesian*, 824 F.2d 1294, 1313 [2d Cir.1987]) (additional citation omitted). "Thus, this section covers acts that 'interfere with or obstruct one of [the United States'] lawful Governmental functions by deceit, craft or trickery, or at least by means that are dishonest ...'" *Id.* (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). With these standards in mind, the Second Circuit has dictated the four elements of a section 371 conspiracy-to-defraud offense: (1) that the defendant entered into an agreement (2) to obstruct a lawful function of the Government (3) by deceitful or dishonest means and (4) by at least one overt act in furtherance of the conspiracy. *Id.* (quoting *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir.1993)).

The single count of the indictment tracks the statutory language of 18 U.S.C. § 371 and alleges that defendants "together with others, knowingly and intentionally conspired to defraud the United States by impeding, impairing, obstructing and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department, an agency and department of the United states, in the ascertainment, computation, assessment and collection of revenue, to wit: income taxes." (Indictment, at ¶ 4). In addition, the indictment sets forth the time frame of the conspiracy. Specifically, the conspiracy is alleged to have occurred "in or about and between September 1989 and October 1996" (Indictment, at ¶ 4). The indictment also specifies which checks were alleged to have been issued to fictitious individuals and entities by listing six (6) "New Way" checks and four (4) "Safe Way" checks, and their respective dates, check numbers, amounts, and allegedly fictitious persons or entities to whom the check was issued (Indictment, at ¶ 10). In addition, the

indictment charges that during the period of the conspiracy, Suffolk Distributing and Safe Way did not file federal corporate tax returns, Marietta filed a federal corporate income tax return only for 1994, and New Way filed federal corporate income tax returns only for 1991 and 1994 (Indictment, at ¶ 9). In the Court's view, the indictment is sufficiently specific to permit defendants to prepare their defense and to bar future prosecutions for the same offense. It is therefore valid on its face.

The Court rejects the defendants' suggestion that the indictment is deficient for failure to allege that the interference with the IRS occurred by means of deceit, craft, or trickery, as required by *Hammerschmidt v. United States*, 265 U.S. at 188, 44 S.Ct. 511 ("To conspire to defraud the United States means ... to interfere with or obstruct one of its lawful Governmental functions by deceit, craft or trickery, or at least by means that are dishonest.") In support of their position, the defendants apparently contend that since the indictment does not contain the phrase "deceitful or dishonest means," it is per se defective. In this regard, the defendants rely primarily on *United States v. Cote*, 929 F.Supp. 364 (D.Or.1996), a case where the District Court was reviewing an indictment after the Ninth Circuit Court of Appeals reversed the defendants' convictions on the basis that the District Court's jury instructions failed to allege an essential element of the offense, namely that the agreement to obstruct the IRS' functions was carried out by "deceitful or dishonest means." *United States v. Cote*, 929 F.Supp. at 364 (citing *United States v. Caldwell*, 989 F.2d 1056, 1059–61 (9th Cir.1993)). In granting the defendants' motion to dismiss the indictment, the District Court found that:

"[T]he indictment is invalid on its face because it fails to allege an essential element of the offense. Although the indictment uses the term 'defraud,' it does so in the same manner presented at trial, eliminating the deceitful or dishonest means element. This, the appellate court found is deficient. Reviewing the indictment as a whole, I find that the grand jury may well have issued the indictment upon the erroneous assumption that any attempt to im-

pair or impede the IRS could constitute an attempt to defraud the IRS. The fact that the indictment refers to a few acts which might satisfy the deceitful or dishonest means element cannot cure the defect...."

*Id.* at 365–69. This Court is not persuaded by the ruling in *Cote,* and declines to follow it. *See United States v. Foster,* 1997 WL 685371, *14 (D.Minn. May 27, 1997) (declining to follow *Cote,* finding that it did not "comport[ ] with the established precedent."). The sort of formalism suggested by the defendants and the *Cote* opinion flies in the face of the Second Circuit's "common sense" approach to reading indictments. *See United States v. Stavroulakis,* 952 F.2d at 693. In the Court's view, the allegation that the defendants conspired to defraud the IRS by issuing checks to fictitious individuals and entities makes out an act of "dishonesty and deceit," even without the ritualistic recitation of the words "deceitful and dishonest means."

Equally unavailing is the defendants' argument that the indictment fails to state a crime within the meaning of 18 U.S.C. § 371, because "there is no nexus between any acts of the defendants that can be construed as 'deceitful or dishonest' and any function of the IRS." (Defendants' Memorandum of Law, at 9). The defendants concede that Courts have "never used the 'nexus' language,", but nevertheless urge that "fairness and logic dictate" their position (Defendant's Memorandum of Law, at 12). To the extent the defendants' contend "that the required element of 'obstruction' or 'interference' must involve actual contact between the defendant[s] and the Government agency—for instance, through the making of misrepresentations to agency officials or the submitting of false information to the agency—[their position] finds no support in the case law." *Ballistrea,* 101 F.3d at 832.

In the Court's opinion, the allegations in the indictment are adequate to make out the crime charged. Paragraph four of the indictment states that the agreement entered into by the defendants was for the purpose of impeding, impairing, obstructing and defeating the lawful functions of the IRS. The indictment goes on to explain how the defendants effected the conspiracy. Viewed collectively, these allegations suffice. The Court finds the remaining cases cited by the defendants inapposite, as they address the sufficiency of evidence of guilt at trial, and not the adequacy of an indictment. *See, e.g., United States v. Tarnopol,* 561 F.2d 466 (3d Cir.1977).

For the foregoing reasons, the defendants' motion to dismiss Superceding Indictment Number Cr 98–397 is denied.

**C. The Defendants' Motion for a Bill of Particulars Under Rule 7(f) With Respect to Superceding Indictment Numbers CR 98–96 and CR 98–397**

The defendants move for an Order directing the Government to serve and file a bill of particulars with respect to both superceding indictments. According to the defendants, a bill of particulars is required because the alleged conspiracies occurred over the course of several years and involved many co-conspirators, and because the numerous allegations contained in he indictments are vague and uninformative.

■ Requests for a bill of particulars are governed by Fed.R.Crim.P. 7(f) which states as follows:

"The Court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such condition as justice requires."

According to the Second Circuit:

"A bill is appropriate to permit a defendant to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."

*United States v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988) (quoting *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987)). The decision as to whether the Court will grant a motion for a bill of particulars is "within the sound discretion of the district

court." *Davidoff, supra,* 845 F.2d at 1154 (citing *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984)); *see also United States v. Macchia,* 35 F.3d 662, 671 n. 1 (2d Cir.1994)

In addressing a motion for a bill of particulars, the Second Circuit has also stated this important rule:

> "The function of a bill of particulars is to provide defendant with information about the details of the charge against him, if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial.... A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.... Acquisition of evidentiary detail is not the function of a bill of particulars.... So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion."

*United States v. Torres,* 901 F.2d 205, 234 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

In reliance upon such cases as *Bortnovsky, supra,* and Fed.R.Crim.P. 7(f), counsel for the defendants provided the Government with a demand for particularization of the one-count indictments. The defendants requested particularization in great detail, so that the Government identifies, among other matters: (1) the name, address and telephone number of each and every co-conspirator including those who worked at Royce Aerospace, any banks that cashed checks and check cashers; (2) which conspirators will be called as witnesses at trial; (3) each and every overt act the Government intends to prove at trial; (4) each company allegedly controlled by the defendants; (5) an indication as to which companies were real and which were fictitious; (6) the total amount of all "fees" kept by the defendants; (7) a specification as to which entries on the 1991, 1992 and 1993 tax returns were false; (8) the date, time and place each member of the conspiracy joined and withdrew from the conspiracy; (9) where the overt acts were committed, if outside the Eastern District; (10) each statement made by a co-conspirator during and in furtherance of the conspiracy; (11) who paid bribes or kickbacks and to whom paid; (12) as to each account the Government intends to prove a Royce check was deposited, an indication as to the authorized person on each account and who received each check; (13) whether any companies listed in the indictment did legitimate work for Royce; (14) names of subcontractors to whom the kickbacks were paid; (15) the date, form and amount of each kickback; (16) the name, amount, date, and terms of each sales contract awarded to Royce as a result of kickbacks; (17) a detail of the function the IRS was performing when the defendants agreed to impede or obstruct the IRS; (18) specification as to the "deceitful and dishonest means" used to impede the IRS; (19) a statement as to whether any of the tax returns that were filed with the IRS for Marietta or New Way were false or fraudulent; and (20) the names and address of each and every customer who gave checks to the defendants on behalf of Suffolk Distributing, New Way, Safeway and Marietta.

■ The Government argues that the defendants have ignored the established principle governing requests for a bill of particulars. The guiding rule is that a bill of particulars is not a discovery tool, the Government need not provide evidentiary details, and is not intended to allow defendants a preview of the evidence. The Government states that a motion for a bill of particulars should be granted only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.

■ The Court agrees. As discussed more fully above, Indictment Number CR 98–397, a drawn by the Government, is an informative and specific accusatory instrument that inform: the defendants of the crimes charged. A review of Indictment Number CR 98–96 compels the same conclusion. The Court finds that it also is unambiguous and clear, rendering a bill of particulars unwarranted.

Accordingly, the defendants' request for a bill of particulars with respect to Indictment Numbers CR 98–96 and 98–397 is denied.

### D. The Defendants' Motion to Compel Discovery With Respect to Superceding Indictment Numbers CR 98–96 and CR 98–397

The defendants move for a Court order compelling discovery of various categories of documents. The defendants state that while the Government previously provided many of these items as part of a set of approximately 1500 documents, they were illegible. The Court directs that the Government to provide another set of these documents to the defendants forthwith and at no additional charge, given that the defendants paid for the first, illegible set.

The Court addresses each request below, corresponding in number to those designated in the defendants' motion:

1. *All tax returns on file with the IRS for each company named in the indictment:*

The Government does not dispute its obligation to turn over these documents, and states that any tax returns which the Government anticipates using at trial have been made available to the defendants for review. The Government further notes that many of the companies listed in the superceding indictments have never filed tax returns. To the extent the tax returns which were filed were supplied to the defendants in the set of 1500 illegible documents, the Government is ordered to immediately turn over a second set of copies.

2. *The name, address and telephone number of each witness the Government intends to call during its case-in-chief, a copy of each witnesses' prior statement and Brady material related to each witness*

As for the request for a witness list, it is granted with the Government's consent. However, the Government objects to revealing each witness' respective address and telephone number, and the defendants have not provided any authority for doing so. Accordingly, the defendants' request for this additional information regarding each witness is denied, without prejudice and with leave to renew with appropriate, specific authority supporting such a discovery demand.

In addition, the Government is reminded of its obligation to disclose evidence that could be used to impeach government witnesses. *See Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and shall turn over such evidence immediately. Also, while the Government need not disclosure their witness' prior statements until the witness has testified (Jenks Act, 18 U.S.C. § 3500), in the interest of trial efficiency, the Government has agreed to provide the requested material prior to jury selection and is directed to do so.

3. *Identify and/or provide a copy of each document the Government intends to offer, or to use or refer to in connection with the testimony of any witness*

The Government has agreed to provide a marked set of its exhibits no sooner than four days prior to trial. That time has arrived, and accordingly, the Government is directed to turn this over to the defense forthwith.

4. *Information regarding Royce, including books and ledgers for 1991 through 1993 tax years, accountants' notes, audit information, refund checks, payroll returns, and IRS forms 941, 5329, and W–2*

Since the Government has agreed to provide these materials, to the extent they are in its possession, the Government is directed to turn this over to the defense forthwith.

5. *Indicate if at any time the defendants were made aware of any audit or other IRS action taken regarding Royce.*

During oral argument on this motion, the Government related this information to the defendants on the record. Accordingly, the defendants motion for this information is granted, with the Government's consent.

6. *Memorandums of interviews and all agent reports.*

The Government correctly notes that under Rule 16(a)(2), agents' reports are not discoverable. Although 18 U.S.C. § 3500 directs that statements or reports made by agents shall not be turned over until the

witness has testified on direct examination at trial, the Government has agreed to provide such statements now, and is directed to do so.

7. *Indicate which of the checks the Government intends to show were signed, written and endorsed by the defendants.*

The Government contends that the defendants can uncover this information by reviewing the items in their possession or which have been made available to them. To the extent these checks were supplied to the defendants in the set of 1500 illegible documents, the Government is ordered to turn over a second set of copies. This request also seems to be addressed by the Government's agreement to provide a marked set of its exhibits no sooner than four days prior to trial, which the Court directs be turned over to the defense forthwith.

8. *Information regarding the companies.*

The Government contends that it has turned overall such information in its possession. Again, to the extent these documents were supplied to the defendants in the set of 1500 illegible documents, the Government is ordered to turn over a second set of copies prior to jury selection.

9. *Information regarding the companies.*

*See* discovery request number 8, *supra.*

10. *Check cashing applications filled out by the defendants, plus a copy of each entry into the books or ledger of the cash checker showing who personally cashed each Royce check.*

*See* discovery request number 8, *supra.*

11. *Any and all witness statements indicating that either defendant was not involved or not aware of either conspiracy.*

The Government acknowledges its obligation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), stating that it is aware of no such material relating to the defendants and that it will provide timely disclosure if any such material comes to light. To assure defendants adequate time to utilize it, the Government is directed to provide any *Brady* and *Giglio* material forthwith, unless the Government

makes a particularized showing justifying exceptions.

12. *Copies of any telephone or other audio recording involving any of the co-conspirators.*

The Government argues that the defendants are not entitled to this information. The Court concurs. "The statements made by co-conspirators are not discoverable under Federal Rule of Criminal Procedure 16(a)" and there is no authority for compelling their disclosure *United States v. Munoz,* 736 F.Supp. 502, 504 (S.D.N.Y.1990) (citations omitted). Accordingly, the defendants' motion for disclosure of this evidence is denied, without prejudice and with leave to renew upon supplying the Court with specific authority for their request.

13. *Remaining Requests*

The defendants also request that the Government make certain clarifications or identifications with respect to discovery items. For example, the defendants want the Government to specify which entries in Royce's 1991, 1992 and 1993 tax returns charged as overt acts were false, and rely on *United States v. Turkish,* 458 F.Supp. 874 (S.D.N.Y. 1978) and *United States v. Bortnovsky,* 820 F.2d 572 (2d Cir.1987). In *Turkish,* the defendant "[sought] a direction to the Government to indicate which of the approximately 25,000 documents relating to this case in the Government's possession it intends to use at trial, rather than 'bury[ing] the defendant in paper' by merely generally making all of the documents available to defendants." *Id.* at 882. The district court granted the defendant's motion because, the court reasoned, Rule 16 requires that the Government allow the defendant to inspect and copy all documents "which will be relied on or referred to in any way by any witness called by the Government during its case in chief." *Id.* (quoting *United States v. Countryside Farms, Inc.,* 428 F.Supp. 1150, 1154 (D. Utah 1977)).

In *United States v. Bortnovsky,* 820 F.2d 572 (2d Cir.1987), the Government also contended that it had fulfilled its obligations to inform the defendants of the charges against them by allegedly being specific in the indict-

ment and providing over 4,000 documents. The twelve count indictment included a violation of the mail fraud statute and conspiracy to defraud the United States by virtue of a scheme whereby the defendants submitted false claims for burglary to the Federal Insurance Administration and the New York Property Insurance Underwriting Association. The indictment provided a list of the suspect pieces of mail along with their approximate dates of mailing and addressees but did not enumerate which of numerous documents were falsified or the dates of the allegedly staged burglaries.

The Court of Appeals reversed the convictions because it concluded that the defendants "were hindered in preparing their defense by the district court's failure to compel the Government to reveal crucial information: the date of the fake burglaries and the identity of the three fraudulent documents." *Id.* at 574. The court reasoned that the burden of proof had been impermissibly shifted to defendants because they were forced to explain events surrounding eight actual burglaries and to confront numerous documents unrelated to the charges pending. *Id.* at 574–75. The court wrote,

> The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified or which of some fifteen burglaries would be demonstrated to be staged.

*Id.* at 574.

The Court finds no such concerns present here. The defendants' requests seem to be addressed by the Government's agreement to provide a marked set of its exhibits prior to trial. Also, during oral argument on this motion, the Government addressed many of the defendants' requests, for example, by specifying the nature of the conspiracy and the portion of the Royce tax returns alleged to be false. In the Court's opinion, no further clarification is required or warranted.

## V. CONCLUSION

Having reviewed the parties' submissions and afforded the opportunity for oral argument, it is hereby

**ORDERED,** that the defendants' motion to dismiss Superceding Indictment Number CR 98–397 is denied; and it is further

**ORDERED,** that the defendants' motion for a bill of particulars with respect to Superceding Indictment Numbers CR 98–397 and CR 98–96 is denied; and it is further

**ORDERED,** that the defendants' motion to compel discovery with respect to Superceding Indictment Numbers CR 98–397 and CR 98–96 is granted in part and denied in part, as set forth above.

**SO ORDERED.**